> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: 6-15-10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOHNNIE COOKS,

                        Petitioner,       :   **REPORT AND**
                                       :   **RECOMMENDATION**

        - against -             :

                                       :   **08 Civ. 3830 (GBD) (RLE)**

H. GRAHAM,

                        Respondent.   :

**To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Petitioner Johnnie Cooks, a New York state prisoner at Auburn Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. His Petition was received by the *Pro Se* Office in this District on February 28, 2008, and subsequently filed on April 23, 2008. (Doc. No. 1.) Cooks was convicted of burglary in the first degree (N.Y. PENAL LAW § 140.30[3]), robbery in the first degree (N.Y. PENAL LAW § 160.15[3]), robbery in the second degree (N.Y. PENAL LAW § 160.10[2][b]), and two counts of endangering the welfare of a child (N.Y. PENAL LAW § 260.10[1]). He was sentenced to consecutive determinate terms of twenty years for the first-degree burglary conviction and twenty years for the first-degree robbery conviction, to run concurrently with a definite term of incarceration of one year for the child endangerment convictions.

Cooks contends that his incarceration violates the United States Constitution because 1) he was denied the right to represent himself; 2) there was a violation of voir dire; 3) he received an excessive sentence; 4) he received ineffective assistance of counsel; 5) there was a *Wade* hearing violation; 6) there was a violation of N.Y. CRIM. PROC. § 730; and 7) there was a violation of N.Y. CRIM. PROC. § 670.10. For the reasons set forth below, I recommend that his

Petition be **DENIED**.

## II. BACKGROUND

### A. The Crime

Cooks was convicted of the above-mentioned crimes for his involvement in an incident at the home of Meyra Garcia on July 23, 2002. (Trial Transcript ("Tr.") at 1333-35.) In concert with Johnnie Scott and Carmelo Pereira, Cooks forced his way into Garcia's apartment using a gun and a knife (*Id.* at 838-39, 845, 901), restrained her and the six children in her charge (*Id.* at 879-83, 942, 952), and robbed the premises, taking cell phones, jewelry, money, and other items (*Id.* at 661, 681-89, 765). One of the children in the apartment used a cell phone to call the police. (Tr. at 625, 836) Officers arrived promptly (*Id.* at 623, 758-59, 772, 786), and knocked on the door. When Garcia and her son, Christopher, opened the door, both had their hands bound with duct tape and Christopher's head was covered with a piece of clothing. (*Id.* at 631-33, 696, 759-60.) Cooks, Scott, and Pereira were still inside the apartment. (*Id.* at 634-39, 760-64.) Scott and Pereirra were arrested without incident, and Cooks was found in a back bedroom lying face down with his hands spread in front of him. (*Id.* at 633, 639, 719, 760-64.) An unloaded gun was found on the floor two to four feet from Cooks. (*Id.* at 639-40, 716-18, 780.)

### B. Pretrial and Trial

Prior to trial, Cooks's mental health status and ability to assist his defense were put at issue. (Hearing Transcript ("H.") at 4, 12, 15.) In accordance with N.Y. CRIM. PROC. § 730, he underwent two competency evaluations. (Andrew S. Holland's Aff. in Opp'n to Pet. for Habeas Corpus ("Holland Aff."), Sep. 17, 2008, Exs. 15, 16, 17.) On August 19, 2002, Drs. Melissa Kaye and Lizica Troneci of the Belvue Hospital Center conducted a psychiatric evaluation of Cooks and determined that he was fit to stand trial. (Holland Aff., Exs. 15, 16.) On September 8

2

and 15, 2002, in conjunction with Dr. Kaye, Dr. Sarah Schoen, a licensed psychologist, conducted another evaluation and reached the same conclusion. (*Id.*, Ex. 17.) All three doctors noted several inconsistencies between Cooks's account of his psychiatric history and his symptoms, and did not find his behavior or reported symptoms consistent with any known psychiatric impairment. (*Id.*, Exs. 15, 16, 17.) They dismissed what they perceived as a ploy by Cooks to play up symptoms he believed to be consistent with psychosis. (*Id.*) Dr. Troneci attributed this feigning of mental illness as an attempt by Cooks to avoid responsibility for criminal acts. (*Id.*, Ex. 16.)

Pretrial hearings commenced in Bronx Supreme Court on September 16, 2003, before Judge Phylis Bamberger, with John Silveri appointed to represent Cooks. (H. at 2.) Cooks interrupted the proceedings several times. (*Id.* at 5, 10, 15, 17, 128, 132; Tr. at 5, 10.) He asked to use the restroom and complained of stomach pains during a discussion concerning a *Wade* hearing. (H. at 5.) He asked for a pass to visit his mother in Albany. (*Id.* at 6.) He interrupted testimony to declare that he could not fix his pants. (*Id.* at 10.) He asked to use the restroom again. (*Id.* at 13-14.) When he returned, he spoke out of turn and interrupted testimony. (*Id.* at 27.) He asked to use the restroom a third time. (*Id.* at 27-29.) After a short recess, Cooks interrupted the proceedings to state that his medication was making him tired. (*Id.* at 40-42.) He was advised by Judge Bamberger of his right to be present and that he could leave if he so wished. (*Id.* at 43.) Cooks left the courtroom and testimony proceeded without him. (*Id.* at 43-102.) Throughout the hearing, Cooks was advised by the court of his right to be present and warned that the hearing and trial could go on without him if he behaved inappropriately. (*Id.* at 31, 34, 38, 123; Tr. at 11.) Based on her knowledge of the psychiatric evaluations conducted by Drs. Kaye, Troneci, and Schoen, and her communication with Dr. Mora of the Prison Health

3

System, Judge Bamberger concluded that Cooks was "malingering." (*Id.* at 107-09.)

During jury selection Cooks expressed his desire to represent himself. (Tr. at 55.)  He was advised by Judge Bamberger of the implications of that decision and was allowed to act on his own behalf at the onset of *voir dire*. (*Id.* at 59, 137, 257.) He took an active role in that process. (*Id.* at 486-489.)  On September 23, 2003, citing stomach pain and diarrhea, Cooks refused to return to the courtroom after lunch recess. (*Id.* at 403-05.) Proceedings were adjourned for the day. (*Id.* at 409.) On September 24, 2003, as Cooks was being escorted to his cell for the lunch recess he fell to the ground and became unresponsive. (*Id.* at 481-86.) He refused to come to the courtroom for the afternoon session, claiming that he had suffered a seizure. (*Id.* at 480, 488.) Convinced that Cooks was malingering, Judge Bamberger reinstated John Silveri as defense counsel, and jury selection continued. (*Id.* at 489.) On September 25, 2003, citing general sickness, Cooks refused to attend the proceedings. (*Id.* at 552-53.) Dr. Uko Okpok of Prison Health Services was called to testify about Cooks's medical status. (*Id.* at 558.) He indicated that Cooks had a history of stomach problems but that an evaluation on September 24, 2003, revealed no sign of illness. (*Id.* at 560.) He also testified that Cooks had a history of seizures and was receiving medication for that condition at the time. (*Id.* at 570.)  Judge Bamburger found that Cooks was malingering and actively choosing to absent himself. (*Id.* at 581.) The proceedings moved forward without him. (*Id.* at 613, 622.)

On Friday, September 26, 2003, a note was sent from Dr. Bishara of the Department of Corrections that Cooks required a "short break from court stresses" to prevent mental destabilization. (*Id.* at 737.) Judge Bamberger adjourned proceedings until the following Monday. (*Id.* at 748.) Over the weekend, Cooks was evaluated by Rodney Means, chief of the Mental Health Unit at Rikers Island, and Dr. Gorelick, a psychiatrist with the unit. (*Id.* at 750.)

4

They determined that Cooks was fit to stand trial. (*Id.*) On September 29, 2003, Cooks was present and reasserted his desire to represent himself, but Judge Bamburger denied the request. (*Id.* at 752-55.) Cooks left the courtroom and the trial proceeded without him. (*Id.* at 756.) He was present intermittently for the remainder of the trial proceedings. (*Id.* at 817, 892, 975, 1000.)

The prosecution presented three complaining witnesses and four police officers during the trial. Cooks was the only witness called by the defense. (*Id.* at 1076.) On November 19, 2003, Cooks was found guilty of the charges noted above, and sentenced.

## C. Post-Trial Procedural History

The Appellate Division affirmed Cooks's conviction on April 20, 2006. *People v. Cooks*, 812 N.Y.S.2d 529 (N.Y. App. Div. 2006). Through counsel, Cooks raised three claims on that appeal: 1) that the trial court improperly denied him the right to represent himself; 2) that his right to be present was violated where the court proceeded with *voir dire* in his absence; and 3) that his sentence was excessive. (Holland Aff., ¶ 6, Ex. 1 at i.) The Appellate Division held that (1) because of Cooks's malingering and disruptiveness, the trial court had properly revoked permission for him to represent himself, and that he had forfeited his right to be present during *voir dire*, and (2) there was no basis for reducing his sentence. *Cooks*, 812 N.Y.S.2d at 530. On July 21, 2006, the New York State Court of Appeals denied Cooks leave to appeal the Appellate Division's decision. *People v. Cooks*, 854 N.E.2d 1280 (N.Y. 2006). Cooks did not seek a writ of certiorari from the United States Supreme Court. (*Id.*)

On January 30, 2007, Cooks filed a *pro se* motion for a writ of error *coram nobis* in the Appellate Division. He claimed ineffective assistance of appellate counsel for 1) failure to argue violation of his right to be present at the pretrial testimony of Dr. Okpok; and 2) failure to challenge the indictment as statutorily and/or jurisdictionally defective. The motion was denied.

5

(Holland Aff., Exs. 4, 6.)

On December 14, 2007, Cooks moved *pro se* in Supreme Court, Bronx County, to vacate his judgment of conviction pursuant to N.Y. CRIM. PROC. § 440.10. He claimed: 1) ineffective assistance of trial counsel; 2) evidence marshalling; 3) inconclusive evaluation of a *Wade* hearing; 4) denial of a proper N.Y. CRIM. PROC. § 730 evaluation; 5) improper use of witnesses in violation of N.Y. CRIM. PROC. § 670.10; and 6) errors, defects, and flaws which caused the courts to display an overzealousness to convict him. (Cooks Pet.) On March 28, 2008, the motion was denied on procedural grounds under § 440.10 because all claims were based on facts that could be found in the record and therefore could have been brought on direct appeal. (Holland Aff., Ex. 9.)

## III. DISCUSSION

### A. Threshold Issues

#### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of the finalization of his conviction. 28 U.S.C. § 2244(d)(1). A conviction becomes final "when his time to seek direct review in the United States Supreme Court by writ of certiorari expires;" that is, where certiorari is not sought, ninety days after final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001). The one-year period will toll while collateral state court relief is pending. 28 U.S.C. § 2244(d)(2). The *Pro Se* Office in this District received Cooks's Petition on February 28, 2008. His petition for leave to the Court of Appeals had been denied on July 21, 2006. *Cooks*, 854 N.E.2d at 1280. Because Cooks did not seek a writ of certiorari, the one-year statute of limitations began to run on October 19, 2006. On January 30, 2007, before the statute had run, Cooks filed a petition for a writ of error *coram*

6

*nobis*. Cooks filed his § 440.10 motion before the error *coram nobis* motion was denied, and filed the present Petition on April 23, 2008. The statue of limitations was thus tolled until the Petition was filed, and his Petition is timely.

### 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), a petitioner must exhaust his Constitutional claims in state court before proceeding to federal court. 28 U.S.C. § 2254(b)(1)(A). There are two prongs to this requirement. Procedurally, a petitioner must have utilized all available avenues of appellate review within the state court system. *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). Substantively, a petitioner's claims in state court must have been raised in federal or constitutional terms. *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (*citing Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191 (2d Cir. 1982)). Although this latter prong is not an exacting standard, a petitioner must have informed the state courts of "both the factual and the legal premises of the claim he asserts in federal court." (*Id.*)

In the instant Petition, there are three clear subsets of arguments raised by Cooks. Claims One through Three were raised by counsel on direct appeal to the Appellate Division and subsequently to the Court of Appeals. Claim Four was raised, to the extent that it is raised here regarding appellate counsel, in Cooks's application to the Appellate Division for a writ of error *coram nobis*. Claim Four, as it pertains to trial counsel, and Claims Five through Seven were raised in Cooks's § 440.10 motion in Bronx Supreme Court. Cooks did not appeal either the denial of his *coram nobis* motion or of his § 440.10 motion. (Counsel for Respondent, Andrew S. Holland's Letter to the Court ("Holland Letter"), Apr. 3, 2009; Cooks Pet.)

Claims One and Two are procedurally and substantively exhausted. Cooks brought them all the way to the Court of Appeals, where leave to proceed was denied. *See Duncan v. Henry*,

7

513 U.S. 364, 366-67 (1995); *Bossett*, 41 F.3d at 828. They were also raised in federal constitutional terms at every step of the appeals process. (Holland Aff., Ex.1 at 25, 36.)

While Claim Three was procedurally exhausted, Cooks cited only state law, thereby failing to substantively exhaust his claim. (Holland Aff., Ex. 1 at 44.) "[A] prisoner's reliance on a state procedural law granting courts discretionary authority to reduce sentences does not 'fairly present' a federal constitutional claim in state court." (*See* Holland Aff., Ex. 1 at 44 (Cooks's Appellate Brief)); *Edwards v. Marshall*, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008); *Herrera v. Artuz*, 171 F. Supp. 2d 146, 151 (2d Cir. 2001). The Court could nevertheless have addressed the claim if a federal issue within the claim was "fairly presented" to the state court, that is, if the state court was apprised of both the factual and legal premise of the claim, or if the nature of the claim was likely to alert the state court to the claim's federal nature. *Ramirez v. Att'y Gen. of N.Y.*, 280 F.3d 87, 95 (2d Cir. 2001); *Jones*, 126 F.3d at 413. Construing Claim Three as an Eighth Amendment claim, however, would be too great an attenuation and the Court would find it meritless. *See Hutto v. Davis*, 454 U.S. 370 (1982) (deferring to legislatively mandated terms of imprisonment in upholding forty-year sentence for distribution and possession of marijuana); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (three-strikes statute does not violate Eighth Amendment, even where third conviction is for stealing $153 worth of videotapes).

Claims Four through Seven are procedurally unexhausted. There is no record that Cooks sought leave to appeal the denial of either of his state court motions, (Cooks Pet.; Holland Letter.) and he has not shown cause for this failure. *See* 28 U.S.C. § 2254(c); N.Y. CRIM. PROC. § 450.15; *People v. Stultz*, 810 N.E.2d 883 (N.Y. 2004) (granting leave to appeal denial of error *coram nobis*).

8

## 3. Procedural Default

Claim Four, as it relates to Cooks's appellate counsel, is procedurally defaulted. A claim is procedurally defaulted where the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claim procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Reyes v. Keane*, 118 F.3d 136, 140 (2d Cir. 1997); *see Woodford v. Ngo*, 548 U.S. 81, 93 (2006). An unexhausted claim may be deemed exhausted but forfeited if it has been procedurally defaulted. *Id.* at 735; *Reyes*, 118 F.3d at 140; *Bossett*, 41 F.3d at 828. The claim, however, meets the technical requirements for exhaustion because there are no longer any state remedies available. *Coleman*, 501 U.S. at 732; citing 28 U.S.C. § 2254(b).

Claim Four, as it relates to appellate counsel, was raised in an error *coram nobis* petition that was denied by the Appellate Division on December 27, 2007. Cooks had thirty days from the date on which he was served with notice of the denial to seek leave to the Court of Appeals. (N.Y. C.P.L.R. § 5513(b)). Because he did not, and now cannot, this aspect of Claim Four is procedurally defaulted. Therefore, Claim Four is deemed exhausted but forfeited. *Thompson*, 501 U.S. at 735; *Reyes*, 118 F.3d at 139; *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989). Additionally, it is without merit.

Claims Four, as it relates to trial counsel, and Five through Seven are also procedurally defaulted. Those issues were initially raised in Cooks's § 440.10 motion, which was denied on March 28, 2008. (Holland Aff. ¶ 10.) He did not appeal, and is now time-barred under state law from now raising these claims. They are deemed exhausted but forfeited. *See* N.Y. CRIM. PROC. § 460.10(4)(a); *Thompson*, 501 U.S. at 735; *Reyes*, 118 F.3d at 139; *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989).

9

### 4. Procedural Bar

A claim is procedurally barred and precluded from habeas review if 1) the state court declined to address the petitioner's federal claim because petitioner failed to meet a state procedural requirement, and 2) the state court decision rested on an independent and adequate state ground. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Jones v. Vacco*, 126 F.3d 408, 414 (2d Cir. 1997) (*citing Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994)). A state law ground is "adequate" if "the state's insistence on compliance with its procedural rule serves a legitimate state interest." *Wainwright v. Sykes*, 433 U.S. 72, 83, n.8 (1977) (*quoting Henry v. Mississippi*, 379 .S. 443, 447 (1965)). "The Second Circuit has recognized that New York's preservation rule typically constitutes an independent and adequate state procedural ground on which the Appellate Division may deny a criminal defendant's appeal."[1] *Kemp v. New York*, No. 07 Civ. 6996 (RMB)(HBP), 2009 WL 306258, at *9 (S.D.N.Y. Feb 9, 2009) (*referencing Garcia v. Lewis*, 188 F.3d 71 (2d Cir. 1999); *Clark v. Perez*, 510 F.3d 382 (2d Cir. 2008); *Richardson v. Greene*, 497 F.3d 212 (2d Cir. 2007)). A petitioner can overcome this procedural bar if he can show cause for the default and actual prejudice, or "demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750 (internal citations and quotations omitted).

Claim Four, as it relates to ineffective trial counsel, and Claims Five through Seven were denied as procedurally barred. *People v. Cooks*, Ind. No. 3940/02 (J. Price)); Holland Aff., Ex. 9. This was an independent and adequate state procedural grounds. (Holland Aff., Ex. 9.) These claims are therefore procedurally barred here, *Coleman*, 501 U.S. at 750; *Jones*, 126 F.3d at 414,

---

[1]The New York preservation rule requires a contemporaneous objection to any alleged legal error by defense counsel at a criminal trial. *Richardson*, 497 F.3d at 217 (citing N.Y. CRIM. PROC. § 470.05(2)).

and may be deemed exhausted for habeas purposes.

## B. Merits

### 1. Standard of Review

The Anti-Terrorism and Effective Death Penalty Act constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254 (d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 2. Claim One: Cooks Was Not Denied Right to Represent Himself

Cooks claims that the trial court violated his Sixth Amendment right to represent himself during *voir dire* when, after he reported being too ill to proceed, Judge Bamberger reinstated counsel. While Cooks correctly asserts that the Sixth Amendment implies a right to represent oneself, that right is not absolute. It is well within the trial judge's discretion to "terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." *Faretta v. California*, 422 U.S. 806, 834-35 n. 46 (1975); *Martinez v. Ct. of Appeal*

11

*of Calif., Fourth Appellate Dist.*, 528 U.S. 152, 154 (2000). On direct appeal, the Appellate Division upheld the trial court's decision to proceed despite Cooks's absence, noting Cooks "was disruptive, feigned mental illness, feigned physical ailments, and repeatedly asked to leave the courtroom." (Holland Aff., Ex. 3.) The state court's factual determinations were not unreasonable. (*See* Tr. at 489.)

### a. Factual Determinations

At trial on September 24, 2002, Judge Bamberger continued with *voir dire* when Cooks, who was acting as his own attorney at the time, refused to leave his cell for the afternoon session. (Tr. at 487-89.) Judge Bamberger reinstated Cooks's original trial counsel, John Silveri. (*Id.*) Earlier that afternoon, as he was being led to his cell for the lunch recess, Cooks fell and became unresponsive. (*Id.* at 481-86.) Through his then stand-by counsel, he made known that he believed he had suffered from a seizure. (*Id.* at 488.) Judge Bamberger based her decision to continue with the proceedings on her determination that Cooks was malingering and choosing to be absent. (*Id.* at 489.)

By the time Judge Bamberger made her determination to reinstate Silveri, Cooks had interrupted the proceedings at least eighteen times. (H. at 5, 9, 10, 13, 27-29, 38, 40-42, 125, 128, 131-35; Tr. at 3, 7, 10, 12, 47, 110, 112, 182.)[2] These outbursts were not the only method by which Cooks disrupted the proceedings. Before he began acting as his own attorney, proceedings were stopped twice so Cooks could use the restroom. (H. at 5, 13.) Judge Bamberger noted that Cooks had been drawing and making faces. (*Id.* at 109.) On September 23,

---

[2]These disruptions included asking for a pass to see his mother (H. at 5), interrupting to state that he couldn't fix his pants (H. at 10-11), claiming to hear voices (H. at 125), calling the doctors at his competency evaluation liars, (Tr. at 110-11), and threatening to chew glass (Tr. at 112).

2003, having been approved to act on his own behalf, the afternoon session was cancelled when Cooks refused to come down from his cell because his "stomach was upset, he was not prepared to come down." (Tr. at 404-09.) These disruptions were consistent with behavior described in reports filed and testimony given by two psychiatrists and a psychologist prior to September 24. (Holland Aff., Exs. 16, 17, 18; Tr. at 89, 120, 139.) Dr. Ciric testified as to what he perceived as "feigned gestures" and a desire to "appear disorganized and psychotic." (Tr. at 102.) Dr. Schoen testified that Cooks was "deliberately not following [the rules], again because it's so effective. It obstructs things. It delays things." (Tr. at 122.) In her report submitted to the court pursuant to NY CRIM. PROC. § 730, Dr. Kaye noted that "[a]lthough Mr. Cooks makes attempts to feign ignorance and confusion, there is no evidence of an authentic mental or medical illness that impedes his understanding." (Holland Aff., Ex. 15.) Judge Bamberger was also presented with her court officer's statement that during Cooks's apparent seizure on September 24, he lay on the ground unresponsive until another court officer told him "the Judge is not here to see this" - at which point Cooks stood up and was escorted upstairs. (Tr. at 482-83.)

Given the extensive and pervasive record of disruption and malingering before her, Judge Bamberger's determination that Cooks was disrupting the proceedings and malingering in order to do so was not unreasonable.

#### b. Legal Determination

The state court's determination that there was sufficient grounds to terminate Cooks's self-representation does not contradict established Supreme Court precedent, and meets the standard in *Faretta*. It is clear that "[a] trial judge may also terminate self-representation . . . if necessary." *Martinez v. Court of Appeal*, 528 U.S. at 162. "[T]he government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in

13

acting as his own lawyer." *Id.* The misconduct must seriously threaten the court in performing its proper function. Cooks's numerous outbursts and instances of inappropriate behavior, the factual determination that he was intentionally attempting to disrupt the proceedings, the serious nature of his final attempt at disruption, and an apparently faked seizure meet that standard.

Cooks's claim that the trial court violated his Sixth Amendment right to represent himself should therefore be **DENIED**.

## 3. Claim Two: Cooks Was Not Denied His Right to be Present When the Trial Court Proceeded with Voir Dire in His Absence

"One of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). The Supreme Court has held that *voir dire* is one such critical stage for which Sixth Amendment rights attach and is, for purposes of Sixth Amendment analysis, a stage of the trial. *Gomez*, 490 U.S. at 872. Cooks is therefore correct that the trial court's continuation of *voir dire* in his absence implicates his constitutional right to be present. As with the right to self-representation, however, the right to be present is qualified. "[A] defendant can lose his right to be present at trial if, after he has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom." *Allen*, 397 U.S. at 342-43 (1970). Cooks was warned of the consequences of his disruptive behavior at least eight times prior to September 24. (H. at 31, 43, 119, 128; Tr. at 11, 44-45, 175-76, 184-85.) He insisted on leaving the courtroom several times (H. at 43, 134; Tr. at 16, 114, 136) and presented a constant threat to the efficiency and order of the courtroom and court proceedings. Additionally, Cooks was not removed from the courtroom; he made a

14

conscious decision not to be present. A defendant's Sixth Amendment rights are not violated when he voluntarily, knowingly, and without justification absents himself from his trial. *Taylor v. United States*, 414 U.S. 17 (1973); *see United States v. Gagnon*, 470 U.S. 522, 528 (1985). Judge Bamberger's decision to continue with *voir dire* despite Cooks's absence and the Appellate Division's reliance on *Allen* to uphold that decision are not contrary to established federal law, but in accord with it.

Therefore, Cooks's claim that he was denied his right under the Sixth Amendment to be present at *voir dire* should be **DENIED**.

## 4. Claim Four: Cooks Did Not Receive Ineffective Assistance of Counsel

### a. Trial Counsel

To establish a violation of his right to effective assistance of counsel Cooks must demonstrate: 1) that counsel's representation "fell below an objective standard of reasonableness" and 2) "that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688-91 (1984). Cooks has not set forth a single argument about his trial counsel's ineffectiveness. In fact, trial counsel is not mentioned in the Petition. Therefore, Cooks has not shown that any failure fell below an objective standard of reasonableness and that the result of his trial would have been different but for his counsel's alleged errors. His claim as to trial counsel is unsubstantiated and without merit.

### b. Appellate Counsel

Cooks maintains that his appellate counsel ought to have argued that 1) he was denied his right to be present during the pretrial testimony of Dr. Okpok and 2) the indictment was statutorily and/or jurisdictionally defective for failure to reference Cooks by name in each count.

15

(Holland Aff., Ex. 5). To succeed on the merits, Cooks must prove that 1) his counsel's performance was deficient and 2) that he was prejudiced by that deficiency. *Smith v. Robbins*, 528 U.S. 259, 285 (2000) (*citing Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In so doing, he must overcome a strong presumption that his counsel acted in accordance with prevailing professional norms and prove that the course taken by counsel was not sound strategy. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1985). Appellate Counsel need not raise every conceivable issue. He cannot miss a good argument and pursue a loser, but he can decide which seems stronger.

As to the first argument, there is no indication that Cooks's absence during the testimony of Dr. Okpok presents a stronger ground for reversal than the similar issue raised by appellate counsel. *See Gomez v. United States*, 490 U.S. 858, 873 (1989) (holding full constitutional right to be present attaches at voir dire). Appellate counsel's issue-selection determination seems all the more well-reasoned given the Appellate Division's resolution of the issue actually raised. In denying Cooks's appeal for violation of his right to be present at *voir dire*, the Appellate Division supported its decision by stating that "[d]efendant was disruptive, feigned mental illness, feigned physical ailments, and repeatedly asked to leave the courtroom." (Holland Aff., Ex.3.) *Voir dire* occurred earlier in the proceedings than Dr. Okpok's testimony. Cooks's appellate counsel made the decision to set forth Cooks's right to be present at trial earlier in the proceedings rather than later. Counsel therefore brought fewer instances of disruption and feigned illness and ailments into the Appellate Division's realm of consideration because he set forth the issue at an earlier stage of the trial. (*See* Tr. at 553-57). Appellate counsel's decision to attack the validity of Cooks's absence at *voir dire* instead of at Dr. Okpok's testimony was not deficient and did not prejudice Cooks because appellate counsel set forth the issue before the

16

court. There is no requirement that the issue be raised at every stage of the proceedings once it has been decided. Thus, appellate counsel's decision cannot constitute grounds for relief here.

Cooks's second argument, that his appellate counsel was ineffective for failure to argue that the indictment was defective, is also without merit. (*See* Holland Aff., Ex.10). Unlike the issues actually briefed, there is no indication that trial counsel preserved the indictment issue. Further, Cooks has made no showing that the alleged defect in the indictment was in fact error (most of the case law cited by him directly contradicts his position) and there has simply been no basis presented with which to disturb the state court's determination that Cooks's appellate counsel acted within prevailing professional norms in choosing to brief the issues he did. *See Knowles v. Mirzayance*, 129 S. Ct. 1411, 1421-22 (2009) (reiterating deference given defense counsel). The claim of ineffective assistance of appellate counsel is without merit.

## 5. Claim Five: Cooks Was Properly Apprehended and Received an Adequate *Wade* Hearing

Claim Five, as it relates to improper marshalling of the evidence, apparently refers to Cooks's contention that the trial court and his counsel failed to consider that because he was apprehended inside Garcia's apartment he could only have been found guilty of attempt. (Holland Aff., Ex.7 at 5.) That claim is not cognizable here. "Which acts constitute the elements of a state crime is a question generally answerable only by the state legislature and state courts . . ." *Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002). Cooks's invocation of the Fourteenth Amendment cannot create a federal issue out of what is clearly a state law claim. (*Id.*)

Within his Fifth Claim, Cooks also argues that the trial court erred generally in its administration of a *Wade* hearing. (Cooks Pet.) The purpose of a *Wade* hearing is to "determine [before] the trial whether pretrial identification procedures have been so improperly suggestive

17

as to taint an in-court identification." *Lynn v. Bliden*, 443 F.3d 238, 248 (2d Cir. 2006) (citing *United States v. Wade*, 388 U.S. 218 (1967)). Cooks challenges his in-court identification by Mayra Garcia on the ground that a display of photos shown to her the evening after the robbery was unduly suggestive and influenced her recollection at trial. (Holland Aff., Ex.7 at 6.) Because Cooks was arrested in Garcia's apartment *during* the robbery and because she testified to having had ample opportunity to see him during it, Cooks has failed to show that the photo display led to a substantial likelihood of misidentification. (*See* H. at 136-50, Tr. at 873); *Simmons v. United States*, 390 U.S. 377, 384 (1968), *United States v. Douglas*, 525 F.3d 225, 242 (2d Cir. 2008). This claim is without merit.

### 6. Claim Six: Cooks's Mental Fitness Was Properly Determined at the Trial

Cooks's Sixth Claim, that he was not given a proper mental examination to determine his fitness to stand trial pursuant to NY CRIM. PROC. § 730, is also not an issue for federal habeas review. The relevant question for the trial judge was "whether [Cooks] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). Resolution of that question is an issue of fact entitled to deference by a federal court. *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995); *Francis S. v. Stone*, 221 F.3d 100, 114 (2d Cir. 2000). Prior to trial, three doctors conducted investigations into Cooks's mental fitness and found him to be feigning mental illness and fit to stand trial. (Holland Aff., Exs. 15,16,17). Those doctors were called to give testimony about their findings. (Tr. at 95, 112, 138). Cooks was examined by at least three other doctors during the course of the trial. (*Id.* at 737-50). Based on this extensive information, Judge

18

Bamberger found Cooks competent to stand trial. (*Id.* at 750). This Court finds no reason to question that decision and finds this claim meritless.

### 7. Claim Seven is Not Cognizable

Claim Seven concerns Cooks's allegation that witnesses were improperly sworn in. There is no indication from Cooks and no rationale that this Court can ascertain which would frame this issue in a federally cognizable way. This claim is meritless.

## IV. CONCLUSION

Claims Three through Seven are unexhausted. Claim Three is procedurally exhausted but not cognizable here. Claims Four through Seven are procedurally defaulted and deemed exhausted. Additionally, Claims Four as it relates to trial counsel, and Claims Five through Seven are procedurally barred. Further, all of Cooks's claims fail on their merits. For the foregoing reasons, I recommend that Cooks's petition be **DENIED**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to the chambers of the undersigned, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).

19

DATED: June 14, 2010
New York, New York

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

Copies of this Report and Recommendation were sent to:

*Pro Se* Petitioner
Johnnie Cooks
03-A-6498
Auburn Correctional Facility
P.O. Box 618
Auburn, NY 13024

Counsel for Respondent
Andrew Stephen Holland
Office of District Attorney, Bronx County
198 East 161 Street
Bronx, NY 10451

20